June 17, 2005

The Honorable James M. Kuboviak
Brazos County Attorney
300 East 26th Street, Suite 325
Bryan, Texas 77803-5327

Opinion No. GA-0333

Re: Applicability of section 145.002 of the Civil Practice and Remedies Code to installers and repairers of lawn sprinkler and landscape lighting systems (RQ-0302-GA)

Dear Mr. Kuboviak:

You ask about the applicability of chapter 145 of the Civil Practice and Remedies Code to installers and repairers of lawn sprinkler and landscape lighting systems.[1]

Chapter 145 of the Civil Practice and Remedies Code deals with liability for negligent hiring by in-home service companies and residential delivery companies. "In-home service company" is defined as "a person who employs a person to enter another person's residence and for a fee repair: (A) an appliance; (B) the residence's heating, air-conditioning, and ventilation system; (C) the residence's plumbing system; or (D) the residence's electrical system." TEX. CIV. PRAC. & REM. CODE ANN. § 145.001(1) (Vernon Supp. 2004-05). "Residential delivery company" is defined to mean "a person who employs a person to, for a fee: (A) deliver an item to another person's residence; and (B) enter the residence to place, assemble, or install the item." Id. § 145.001(2). An in-home service company or a residential delivery company is required to "obtain from the Department of Public Safety or a private vendor approved by the department and offering services comparable to the services offered by the department all criminal history record information relating to an officer, employee, or prospective employee of the company whose job duties require or will require entry into another person's residence." Id. § 145.002. An in-home service company or a residential delivery company is rebuttably presumed to have not acted negligently if:

(1) the company obtained criminal history record information regarding the officer or employee; and

(2) the criminal history record information shows that, in the 20 years preceding the date the information was obtained for a felony

---

[1] Letter from Honorable James M. Kuboviak, Brazos County Attorney, to Honorable Greg Abbott, Texas Attorney General (Dec. 15, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

> or in the 10 years preceding the date the information was obtained for a misdemeanor, the officer or employee had not been convicted of:
>
> > (A) an offense in this state classified as:
> >
> > > (i) an offense against the person or the family;
> > >
> > > (ii) an offense against property; or
> > >
> > > (iii) public indecency; or
> >
> > (B) an offense in another jurisdiction that would be classified in a category described by Paragraph (A) if the offense had occurred in this state.

*Id.* § 145.003(b). In addition, "[a] person who contracts with a residential delivery company to deliver an item or who contracts with an in-home service company to place, assemble, repair, or install an item referred to in Section 145.001(1), is rebuttably presumed to have not acted negligently in doing so," as long as either (1) the residential delivery company or in-home service company has complied with section 145.003(b), or (2) the contracting person requests, in writing, that the company obtain a criminal history background check on each covered employee and delivers the request to the company prior to the employee's entry into any residence. *Id.* § 145.004.

Your first two questions pertain to whether an installer or repairer of lawn sprinkler and landscape lighting systems is embraced within the definition of "in-home service company" or "residential delivery company." *See* Request Letter, *supra* note 1, at 2. As we have noted, chapter 145 is applicable only to a person "who employs a person" to "enter another person's residence" or to "enter the residence." We must therefore determine as a threshold matter the meaning of the term "residence."

The Code Construction Act requires that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage," unless they "have acquired a technical or particular meaning, whether by legislative definition or otherwise." TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005). We have found no judicial decision, from Texas or any other jurisdiction, that defines the word "residence" in the context suggested by chapter 145 of the Civil Practice and Remedies Code. On the other hand, various dictionaries limit the term "residence" to a "house," "dwelling," or "abode." Blacks Law Dictionary, for example, defines "residence" as "[a] house or other fixed abode; a dwelling." BLACK'S LAW DICTIONARY 1310 (7th ed. 1999). Other dictionaries echo this definition. The Oxford English Dictionary defines "residence" as "[t]he place where one resides; one's dwelling-place; the abode of a person." XIII OXFORD ENGLISH DICTIONARY 707 (2d ed. 1989). The American Heritage Dictionary defines "residence" as "[t]he place in which one lives; a dwelling." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH

LANGUAGE 1483 (4th ed. 2000). The latter defines "dwelling," in turn, as "[a] place to live in; an abode." *Id.* at 558.

Moreover, chapter 30 of the Penal Code, which criminalizes burglary and criminal trespass, defines "habitation" as "a structure or vehicle that is adapted for the overnight accommodation of persons, and includes: (A) each separately secured or occupied portion of the structure or vehicle; and (B) each structure appurtenant to or connected with the structure or vehicle." TEX. PEN. CODE ANN. § 30.01(1) (Vernon 2003). The same statute defines "building" as "any enclosed structure intended for use or occupation as a habitation or for some purpose of trade, manufacture, ornament, or use." *Id.* § 30.01(2). Similarly, chapter 28 of the Penal Code, which describes "offenses against property," defines "habitation" and "building" in identical terms. *Id.* § 28.01(1)-(2).

A number of judicial decisions have considered the meaning of the terms "habitation" and "building" under these criminal statutes. *See, e.g., Swain v. State,* 583 S.W.2d 775, 777 (Tex. Crim. App. 1979) (legislature did not intend to expand concept of burglary of habitation to include entry upon unenclosed and unsecured stairway attached to a residence); *Spencer v. State,* 789 S.W.2d 397, 400-01 (Tex. App.–Dallas 1990, no writ) (warehouse having walls on three sides and a chain-link fence approximately ten to twelve feet high on the fourth side with a secured gate was "building" within meaning of section 30.01(2) of Penal Code). And a 1989 case appears to use the words "habitation" and "residence" interchangeably. *See Wright v. State,* 768 S.W.2d 391, 392 (Tex. App.–El Paso 1989, no writ).

These definitions and authorities seem to indicate that "residence," for purposes of chapter 145, is an enclosure in which a person lives, in contrast to the surrounding realty. This position is supported by legislative history. First, the very phrase selected by the authors of the legislation – "in-home service company" – suggests that the legislature contemplated that the word "residence" be confined to the enclosed space of a home or dwelling rather than to the entirety of the real estate on which the home is situated. In addition, in a hearing before the Senate Committee on State Affairs, Senator Troy Fraser remarked that "House Bill 705 would require companies to get a criminal background check on employees they send *into a home* to (1) repair the electrical, plumbing, or heating/air conditioning system, or (2) to deliver, place, assemble, or install an item *inside a person's home.*" *Hearing on Tex. H.B. 705 Before the Senate Comm. on State Affairs,* 78th Leg., R.S. (May 22, 2003) (statement of Senator Troy Fraser) (emphasis added) (tape available from Senate Staff Services). We conclude, as a result, that the word "residence," for purposes of the statute under consideration, means the enclosed space of a home or other dwelling, and does not embrace the surrounding realty.

Your first question is whether the employee background check is applicable to installers and repairers of lawn sprinkler and landscape lighting systems. *See* Request Letter, *supra* note 1, at 2. We first address the statutory definition of "in-home service company." Such an entity, as we have noted, is defined as "a person who employs a person to enter another person's residence and for a fee repair: (A) an appliance; (B) the residence's heating, air-conditioning, and ventilation system; (C) the residence's plumbing system; or (D) the residence's electrical system." TEX. CIV. PRAC. & REM. CODE ANN. § 145.001(1) (Vernon Supp. 2004-05). Because we have determined that the term

"residence" applies only to a person's actual house or dwelling, an employee who repairs a lawn sprinkler or landscape lighting system is not subject to the background check provision unless the employee's job duties require entry into a person's house or other dwelling in order to repair an "appliance." The word "appliance" has been judicially defined as "a thing used as a means to an end." *Murray v. Royal Indem. Co.*, 78 N.W.2d 786, 787 (Iowa 1956); *accord Palmer v. Great N. Ry.*, 170 P.2d 768, 775 (Mont. 1946); *Roberts v. City of Los Angeles*, 61 P.2d 323, 330 (Cal. 1936). Pursuant to this broad definition, a lawn sprinkler or landscape lighting system component located in a residence is an appliance. If the employee's job duties require entry into a house or dwelling for the purpose of repairing a lawn sprinkler or landscape lighting system component, we believe it is clear that the employee is making repairs to an "appliance." If, on the other hand, the repairing employee's job duties merely require entry into the yard areas, the criminal record check provision does not apply.

We next address the statutory definition of "residential delivery company," which means "a person who employs a person to, for a fee: (A) deliver an item to another person's residence; and (B) enter the residence to place, assemble, or install the item." TEX. CIV. PRAC. & REM. CODE ANN. § 145.001(2) (Vernon Supp. 2004-05). An "item" is commonly defined as "an individual article or unit, esp. one that is part of a list, collection, or set." THE NEW OXFORD AMERICAN DICTIONARY 902 (1st ed. 2001). As such, a lawn sprinkler or landscape lighting system or a system component may reasonably be said to constitute an "item." Again, however, because we have concluded that the yard area is not included within the meaning of the term "residence," an employee who installs a sprinkler system or landscape lighting is not subject to the background check unless the employee's duties require entry into a person's residence to install a system component. If the installer's duties merely require entry into the yard areas, the criminal background check provision does not apply.

You also ask whether a person who enters an attached garage is subject to the background check provision. *See* Request Letter, *supra* note 1, at 2. In this situation, we answer in the affirmative. An attached garage is, by definition, connected to, and therefore a part of, an enclosed house or dwelling. Entry into an attached garage would be likely to provide ready access to individuals who might commit crimes against persons and property, and section 145.002 contemplates a criminal history background check for any in-home service company and residential delivery company employee whose duties require such access.

Your final question is whether the Texas Electrical Safety and Licensing Act, chapter 1305 of the Occupations Code, is applicable to the kind of "activity that nurserymen and landscape contractors engage in when installing lawn sprinklers and yard lighting." *Id.* Section 1305.151 provides that, "[e]xcept as provided by Section 1305.003, a person may not perform electrical work unless the person holds an appropriate license issued or recognized under this chapter." TEX. OCC. CODE ANN. § 1305.151 (Vernon 2004). Section 1305.003 provides a list of exemptions to chapter 1305. Among other exemptions, section 1305.003 declares that "[t]his chapter does not apply to . . . (13) landscape irrigation installers, as necessary to perform the installation and maintenance of irrigation control systems, and landscapers, as necessary to perform the installation and maintenance of low-voltage exterior lighting and holiday lighting excluding any required power source." *Id.* § 1305.003. We conclude that chapter 1305 of the Occupations Code does not apply to the kind of activity that nurserymen and landscape contractors engage in when installing lawn sprinkler and yard lighting systems.

## S U M M A R Y

A "residence," for purposes of chapter 145 of the Civil Practice and Remedies Code, is an enclosed home or other dwelling. If the job duties of an employee of an installer or repairer of lawn sprinkler and landscape lighting systems require entry into an enclosed home or other dwelling, or an attached garage, chapter 145 contemplates a criminal history background check of that employee. If the employee's job duties require entry into the yard or real estate surrounding the enclosed home or attached garage, but not entry into the residence, chapter 145 does not contemplate a background check. Chapter 1305 of the Occupations Code exempts from its coverage the kind of activity that nurserymen and landscape contractors engage in when installing lawn sprinkler and yard lighting systems.

Yours very truly,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee